AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original  ☐ Duplicate Original

| LODGED |
| CLERK, U.S. DISTRICT COURT |
| 5/22/2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____ MMC _____ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| CLERK, U.S. DISTRICT COURT |
| 5/22/2025 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: _____ tsn _____ DEPUTY |

United States of America

v.

Weicheng Shao,

Defendant

Case No.  2:25-MJ-03127-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of September 4, 2024, October 23, 2024, and February 6, 2025, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(3)(B) | Laundering of Monetary Instruments |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Andrew Cox*
_____
*Complainant's signature*

Andrew Cox, Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  _____May 22, 2025_____

_____
*Judge's signature*

City and state:  Los Angeles, California

Hon. Stephanie Christensen, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Thi Hoang Ho (x0596)

## AFFIDAVIT

I, Andrew Cox, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of a criminal complaint against Weicheng SHAO, also known as "Rocket" for a violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(3)(B) (Laundering of Monetary Instruments).

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II.  BACKGROUND OF AFFIANT

3.    I am a Special Agent with Homeland Security Investigations ("HSI") currently assigned to the El Camino Real Financial Crimes Task Force, where I investigate money laundering, narcotics trafficking, cryptocurrency scams, financial fraud, currency reporting requirements, bulk cash smuggling, and other financial crimes and specified unlawful activities for money laundering and the movement of illegally obtained proceeds.

4.   I have participated in various aspects of criminal investigations, including witness interviews, managing informants, records analysis, surveillance, the drafting and execution of search warrants and other legal processes, and reviewing evidence from digital devices, among other things.  I have also spoken to law enforcement agents regarding their experience with investigating financial crimes, and interviewed defendants, confidential informants, and witnesses who had personal knowledge regarding the methods used to commit financial crimes.

5.   I have conducted and participated in money laundering, fraud, and narcotics trafficking investigations, including investigations that resulted in the dismantlement of criminal organizations engaged in the same, including large-scale and transnational criminal organizations.  I am familiar with the methods utilized in money laundering, fraud, and drug operations.

6.   I possess comprehensive knowledge and expertise in cryptocurrency investigations, having undergone extensive formal and informal training in such areas as blockchain technology, blockchain-based digital forensics, pattern analysis tracing, address clustering, the Ethereum ecosystem, smart contract analysis, and decentralized finance protocols.  I have practical experience conducting blockchain analysis and cryptocurrency tracing utilizing both open source and commercial software tools such as Chainalysis Reactor and TRM Labs Forensics. Furthermore,

I have collaborated closely with other law enforcement agents who possess direct experience in these types of investigations.

7.    Based on my training and experience, cash-for-cryptocurrency, also known as cash-for-crypto, is a money laundering method that involves the transaction of bulk quantities of fiat currency in exchange for cryptocurrency. Drug trafficking organizations and other criminal enterprises use this method because it allows for the instantaneous and covert transfer of illicit proceeds to evade detection by or seizure by law enforcement.  In the case of Chinese-based organized crime, cash-for-crypto is an effective means of subverting Chinese government imposed financial capital controls which limit the amount of fiat currency which can be wired from China to other countries like the United States.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

8.    From March 2024 to September 2024, a confidential source ("CS")[1] reported that SHAO was operating what appeared to

---

[1]    The CS is facing a conviction for possession with intent to distribute methamphetamine and is cooperating with law enforcement in hopes of receiving leniency.  The CS has previously sustained misdemeanor convictions for driving with a suspended license, possessing a concealed firearm in a vehicle, and driving under the influence.  The CS has not received any benefits or compensation for cooperation.  I believe The CS's information concerning SHAO is reliable because The CS successfully identified SHAO to me as a cash-for-crypto exchanger and fraudster, and communicated with SHAO, at my direction, to exchange cash for crypto.

Stablecoins are a type of virtual currency.  The value of stablecoins is pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar, or to a different virtual currency.  For example, USDT is a stablecoin pegged to the U.S. dollar.  Stablecoins achieve their price stability via
*(footnote cont'd on next page)*

be a business via WeChat, a mobile messaging application, whereby SHAO would place orders for customers on food delivery services, such as UberEats and GrubHub, at significantly cheaper prices than they would otherwise pay through those food delivery services. SHAO was able to charge discounted prices by using fraudulent credit cards to pay the food delivery services on behalf of his customers, and pocketing the payments he received from those customers. In return for his services, customers paid SHAO by Zelle using the phone number he provided, 626-524-6888 (the "6888 number"). The 6888 number is also linked to SHAO's business Facebook account.

9. Based on information provided by the CS, SHAO also has a separate WeChat username, "rayray3458", which SHAO uses to offer to purchase bank accounts from third parties, to extend credit in exchange for cash, to provide loans purportedly without the need for income checks, to facilitate marriage fraud, and to facilitate cash-for-crypto exchanges for stablecoin2 USD Tether ("USDT").

---

collateralization (backing) or through algorithmic mechanisms of buying and selling the reference asset or its derivatives.

As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

[2] Stablecoins are a type of virtual currency. The value of stablecoins is pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar, or to a different
*(footnote cont'd on next page)*

10.   Using law enforcement techniques, HSI has confirmed the information provided by the CS regarding SHAO's phone number and residence, including as follows:

a.   Los Angeles County records identify SHAO as the property owner of the residence located at 15786 Maplegrove Street, La Puente, California 91744 (the "Maplegrove Street Address");

b.   The 6888 number is registered to the Maplegrove Street Address;

c.   Google Maps images show SHAO's registered vehicle in the carport of the Maplegrove Street Address; and

d.   Surveillance at the Maplegrove Street Address confirmed the presence of SHAO's registered vehicle.

11.   On or about September 4, 2025, at the direction of HSI, the CS facilitated an introduction of two HSI Undercover Agents ("UC", or "UCs") to engage SHAO in cash-for-crypto exchanges, including as follows:

a.   On or about September 4, 2024, SHAO brokered a cash-for-crypto exchange, wherein SHAO's client ("Client-1") paid approximately $30,000 in U.S. currency for UC-1's government-controlled equivalent in USDT.  SHAO reported receiving a 1% commission for the exchange.

b.   On or about October 23, 2024, SHAO brokered a cash-for-crypto exchange, wherein SHAO's client (Client-2) paid

---

virtual currency.  For example, USDT is a stablecoin pegged to the U.S. dollar.  Stablecoins achieve their price stability via collateralization (backing) or through algorithmic mechanisms of buying and selling the reference asset or its derivatives.

approximately $110,000 in U.S. currency for UC-1's government-controlled equivalent in USDT.  SHAO reported receiving a 1% commission for the exchange.

c.    Additionally, on October 23, 2025, SHAO coordinated a second exchange between the UCs and Client-1, wherein Client-1 provided approximately $50,000 in U.S. currency in exchange for UC-1's government-controlled equivalent in USDT. SHAO received reported receiving a 1% commission for the exchange.

d.    On or about February 6, 2025, SHAO brokered a cash-for-crypto exchange, wherein SHAO's client ("Client-3") provided approximately $250,000 in U.S. currency in exchange for UC-1's government-controlled equivalent in USDT.  SHAO received reported receiving a 1% commission for the exchange.  During this exchange, SHAO told the UCs that Client-3's U.S. currency was derived from a gift card fraud scheme wherein Client-3 and their co-conspirators hack Target, Walmart, Costco, and other stores' gift cards to siphon money from them.  SHAO also explained that some of his clients come from the illicit drug trade and from the marijuana industry.

### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

12.  Based on my involvement in this investigation, my conversations with other law enforcement officials involved in this investigation, and my review of reports and records connected to this investigation, I know the following facts:

**A.    The CS Identifies Rocket -- Later Identified as SHAO Engaged in Suspected Money Laundering**

13.    In February 2023, the CS met SHAO at an underground warehouse nightclub and learned that SHAO was involved in cash-for-crypto exchanges in the San Gabriel Valley area of Los Angeles County.  CS-1 and SHAO exchanged WeChat information, and SHAO added CS-1 to a WeChat group titled "LA Party 2".

14.    On or about March 18, 2024, the CS reported that s/he had observed in the "LA Party 2" WeChat group a user named "AA88SZT" marketing food delivery and driver services at significantly reduced prices up to 70% lower than prices charged by other food delivery services, such as UberEats and GrubHub. Agents instructed the CS to call AA88SZT via WeChat regarding the services.  During this call, AA88SZT stated that he placed food delivery orders on third-party applications, like UberEats and GrubHub, using a credit card.  In return, AA88SZT asked that the customer, in this the CS, send AA88SZT payment via Zelle. AA88SZT provided the 6888 number as the phone number linked to his Zelle account.

15.    Based on Google queries, the 6888 number is linked to the "Rocket Chinese Class" Facebook account, www.facebook.com/RocketChineseClass.  During a review of the "Rocket Chinese Class" Facebook account, the CS identified reviews left by SHAO using his personal Facebook account, www.facebook.com/mr.rayshao.  Based on the CS's review of the account, the CS confirmed that s/he knew SHAO to be the individual referred to as "Rocket".

16.  Based on open source and Google queries, the CS confirmed the Rocket Chinese Class business and SHAO's personal residence are both located at Maplegrove Street Address.

17.  The CS stated that SHAO's personal WeChat username was "rayray3458".  Agents' review of the "rayray3458" WeChat page revealed posts showing SHAO offered to purchase in cash access to chat users' bank accounts.  In addition, the "rayray3458" WeChat page showed posts offering to extend credit for cash, loans purportedly without the need for income checks, and posts offering to facilitate green card marriages for cash.  The CS did not place any order with SHAO at this time, but continued to receive messages from SHAO related to the foregoing services.

18.  Using open source and law enforcement databases, agents confirmed SHAO's identifying information provided by the CS, including as follows:

    a.  Law enforcement database checks showed that SHAO was operating the Rocket Chinese Class business from the Maplegrove Street Address;

    b.  Los Angeles County records identified SHAO as the owner of the Maplegrove Street Address; and

    c.  The 6888 number, was registered in SHAO's name to the Maplegrove Street Address.

19.  On or about July 30, 2024, the CS reported that SHAO had posted in the "LA Party 2" WeChat group that he was looking for individuals who were planning to move to China, who had a business bank account and good credit, and no intention of returning to the United States.  Specifically, SHAO asked these

individuals to contact him regarding relinquishing their bank accounts in exchange for monetary compensation.  SHAO also solicited individuals interested in marrying for green cards and/or monetary compensation, and stated he had lawyers who could assist with the process.  As of May 2025, SHAO is still marketing these services in the WeChat group chat.

20.  On or about August 9, 2024, law enforcement agents presented the CS with a photo of SHAO from SHAO's California driver's license.  The CS confirmed that the individual in the photo was SHAO. Additionally, the driver's license photo of SHAO matched photos previously provided by the CS.

21.  On or about May 19, 2025, agents executed an administrative subpoena on New Cingular Wireless/AT&T Wireless for information related to the 6888 number.  I reviewed the records and observed that the number is currently registered to SHAO the Maplegrove Street Address.

**B.    SHAO Solicits and Engages in Cash-for-Crypto Exchanges**

22.  From August 4 to August 31, 2024, SHAO, using the username "rayray3458", posted at least eight times in the "LA Party 2" WeChat group to solicit cash-for-crypto exchanges.

23.  In total, SHAO completed four cash-for-crypto exchanges, as described below.

    1.    The September 4, 2024, Cash-for-Crypto Exchange

24.  On or about August 26, 2024, the CS contacted SHAO via WeChat regarding an exchange of $200,000 in U.S. currency from the CS's purported clients—who were in fact HSI UCs—in return for SHAO's clients' USDT.  SHAO agreed to the exchange subject

to his receipt of a 1% commission fee.  SHAO agreed to meet with the CS and the UCs on September 4, 2024 in Rowland Heights, California to conduct the exchange.  The following is a summary of the exchange:

a.   On September 4, 2024, HSI agents conducted surveillance at the Maplegrove Street Address.  During their surveillance, agents observed a blue Mercedes Benz SUV, with California license plate 9BID502 (the "Subject Vehicle"), in the Maplegrove Street Address carport.  Based on law enforcement checks, the Subject Vehicle is registered to SHAO.

b.   As previously arranged between the CS and SHAO, the UCs met with SHAO at the Bank of America located at 1501 Nogales Street, Rowland Heights, California ("Rowland Heights Bank of America").  During this meeting, agents observed SHAO arrive in the Subject Vehicle, which was previously seen at the Maplegrove Street Address.

c.   During the exchange, the CS provided SHAO's clients with approximately $30,000 worth of USDT in return for $30,000 in bulk U.S. currency.  SHAO'S clients, an Asian female and Asian male (together, "Client-1"), were also present at the Rowland Heights Bank of America to conduct the exchange. According to Department of Motor Vehicle ("DMV") records, Client-1's vehicle, a white Hyundai Genesis with California license plate 9DNG755, was registered to A.K. at an address in Chino California.  Law enforcement agents identified A.K. as a telecom fraud subject of investigation by the El Camino Real Financial Task Force.

25.  Based on my training and experience, subjects engaged in fraud especially in Asian organized crime often use cash-for-crypto exchanges to convert bulk illicit proceeds into USDT to easily funnel the money out of the country or to conceal the origin of the funds, allowing them to state that the earnings they possess are from cryptocurrency transactions and investments.

 2.  <u>On October 23, 2024, SHAO Facilitated Two Cash-for-Crypto Exchanges</u>

26.  On October 23, 2024, the UCs conducted a second cash-for-crypto exchange with SHAO at the Rowland Heights Bank of America.  The following is a summary of events from the exchange:

 a.  On October 15, 2024, UC-1 messaged SHAO via WeChat stating that s/he would be near SHAO and could conduct a cash-for-crypto exchange for SHAO's clients' cash totaling $200,000 the following Wednesday.  SHAO agreed to reach out and coordinate his clients' exchange of cash for the UCs' cryptocurrency.

 b.  On October 23, 2024, the UCs met with SHAO at the Rowland Heights Bank of America.  SHAO arrived at the bank to meet the UCs in the Subject Vehicle.

 c.  SHAO facilitated an exchange of approximately $110,000 in bulk U.S. currency on behalf of his client, an unidentified Asian woman ("Client-2") for the equivalent value in USDT from UC-1.

d.   Shortly after the initial exchange of $110,000, SHAO reintroduced Client-1, suspected of being involved in a telecom fraud scheme, to the UCs who then exchanged approximately $50,000 in U.S. currency for approximately $50,000 in USDT from the UC-1.

3.   The February 6, 2025 Cash-for-Crypto Exchange

27.   On February 6, 2025, the UCs conducted a third cash-for-crypto exchange with SHAO at the Rowland Heights Bank of America.  The following is a summary of events from the exchange:

a.   On January 16, 2025, the UCs messaged SHAO via WeChat stating they would be near SHAO and could conduct a cash-for-crypto exchange totaling $250,000 on February 6, 2025.  SHAO agreed to reach out and coordinate the exchange with his clients.

b.   On February 6, 2025, the UCs met with SHAO at the Rowland Heights Bank of America.

c.   While waiting for SHAO's client to arrive, SHAO explained to both the UCs that his client was involved in a gift card fraud scheme wherein the client and their co-conspirators hack Target, Walmart, Costco, and other stores' gift cards to siphon money from them.  SHAO also explained that some of his clients come from the illicit drug trade and marijuana industry.

d.   SHAO's client, an unidentified Asian male ("Client-3"), arrived in a grey Toyota Corolla.

e.   SHAO facilitated an exchange of approximately $250,000 worth of Client-3's bulk U.S. currency for the equivalent value in USDT from UC-1.

28.   During each of the exchanges, SHAO stated that he would receive his commission for the cash-for-crypto exchanges from his clients totaling approximately 1%.

29.   Based on my training and experience, and statements made by SHAO regarding his awareness that some of his clients' funds were derived from fraud and drug trafficking activities, as well as HSI's identification of SHAO's clients' suspected involvement in fraud and drug trafficking activity, I believe that SHAO is knowingly operating a money laundering business.

30.   As of May 2025, SHAO is continuing to contact the UCs to facilitate additional cash-for-crypto exchanges.

## V.   CONCLUSION

31.   For all the reasons described above, there is probable cause to believe that SHAO has committed a violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), (a)(3)(B) (Laundering of Monetary Instruments).


Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 22nd day of May, 2025.

_____
HONORABLE STEPHANIE CHRISTENSEN
UNITED STATES MAGISTRATE JUDGE